NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

JOHN STEPP'S FRIENDLY FORD, INC.,
Respondent.

No. 19109.

United States Court of Appeals
Ninth Circuit.

Nov. 2, 1964.

834

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Solomon I. Hirsh, Janet Kohn, Attys., N. L. R. B., Washington, D. C., for petitioner.

D. A. Burr, G. F. Boney, Theodore M. Pease, Jr., Burr, Boney & Pease, Neil S. Mackay, Anchorage, Alaska, for respondent.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

MERRILL, Circuit Judge.

The National Labor Relations Board has filed its petition [1] for enforcement of an order issued April 2, 1963, against respondent. By that order the Board found respondent to have violated § 8(a) (5) and (1) of the National Labor Relations Act, 61 Stat. 140 (1947), 29 U.S.C. § 158(a) (5) and (1),[2] by refusing to recognize and bargain with the Union [3] as exclusive bargaining representative of its automobile salesmen.

The question is whether respondent is bound as a successor employer by the Board's certification of the Union, based upon the election of the salesmen-employees of respondent's predecessor.

Respondent's predecessor was Westward Motors, Inc., a franchised Ford-Lincoln-Mercury dealer in Anchorage, Alaska. On October 13, 1961, following the Union's victory in an NLRB election among Westward's salesmen, the Board had certified the Union as exclusive bargaining representative of a unit consisting of "all automobile salesmen employed by the employer at its Anchorage, Alaska, automobile and truck sales establishment * * *." Thereafter Westward's president, beset by personal problems and bad health, determined to resign his franchise and sell the business. In late April, Westward and John Stepp entered into an agreement by which the respondent became committed, upon its approval by the Ford Motor Company and the issuance to it of a Ford franchise, to purchase designated assets of Westward.

Stepp was already the owner of two automobile sales agencies, both dealing with Chrysler products: one, Imperial Motors, located in Anchorage across the street from Westward; the second in

1. Pursuant to § 10(e) of the National Labor Relations Act, 61 Stat. 147 (1947), 72 Stat. 945 (1958), 29 U.S.C. § 160(e) (1958).

2. 29 U.S.C. § 158(a) (5) and (1):
"(a) It shall be an unfair labor practice for an employer—(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title."
"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title."

3. Teamsters Local No. 959 International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

Fairbanks, Alaska, known as "Chrysler City."

Respondent corporation was formed by Stepp to take over the Ford franchise. The Ford Motor Company notified Stepp of its approval. Westward ceased business and terminated its employees on May 11, 1962.

In the succeeding week, while the business remained closed for repainting and remodeling, as well as an inventory of the assets which were being transferred, respondent took applications for employment and interviewed most of the former sales employees of Westward. On May 19th respondent commenced operations as a Ford franchised dealer in Anchorage at the premises previously occupied by Westward. Twenty-one of the thirty persons employed by respondent at its opening had previously worked for Westward, among them the credit manager, the service manager, one of respondent's two sales managers, the parts department manager and the shop foreman.

At the time it went out of business Westward had a sales force of twelve men. Respondent commenced operations with a sales force of eight. Four of these Stepp brought over from his Imperial Motors across the street. After conducting interviews with the Westward salesmen, he hired three. The eighth member of respondent's sales force had not theretofore been employed by either agency.

Prior to the issuance of the franchise to respondent, officials of the Union had notified Stepp of their status as bargaining agent for the salesmen, and had sought to enter into a bargaining contract with respondent. Stepp refused to recognize the Union as bargaining representative and refused to bargain with its officials.

Upon these facts the Board concluded that respondent, as successor to Westward, had violated § 8(a) (5) and (1) of the National Labor Relations Act, supra, by denying recognition and bargaining rights to the Union within the year following its certification.[4] Respondent was ordered to cease and desist from these unfair labor practices and to bargain with the Union upon request. It is this order which the Board here seeks to enforce.

■ It is clear that where the identity of the employer remains the same, changes in the attitude[5] or personnel[6] of the employee unit will not, within one year, entitle him to relief from the certification in the absence of "unusual circumstances."

■ It is also clear that a successor in ownership of the business (under circumstances of continuity which have been discussed in many cases[7]) who takes over the employee unit substantially intact is held, as a "successor employer" of his predecessor's employees, to be

4. As stated in Brooks v. National Labor Relations Board (1954) 348 U.S. 96, 98, 75 S.Ct. 176, 178, 99 L.Ed. 125:

"Under the original Wagner Act, the Labor Board was given the power to certify a union as the exclusive representative of the employees in a bargaining unit when it had determined by election or 'any other suitable method', that the union commanded majority support. § 9(c), 49 Stat. 453. In exercising this authority the Board evolved a number of working rules, of which the following are relevant to our purpose:

"(a) A certification, if based on a Board-conducted election, must be honored for a 'reasonable' period, ordinarily 'one year,' in the absence of 'unusual circumstances.' "

5. Brooks v. National Labor Relations Board (1954) 348 U.S. 96, 75 S.Ct. 176.

6. NLRB v. Armato (7 Cir. 1962) 199 F. 2d 800; NLRB v. John S. Swift Co. Inc. (7 Cir. 1962) 302 F.2d 342.

7. NLRB v. Auto Ventshade, Inc. (5 Cir. 1960) 276 F.2d 303; NLRB v. Hoppes Mfg. Co. (6 Cir. 1948) 170 F.2d 962; NLRB v. Colten (6 Cir. 1939) 105 F.2d 179; NLRB v. Lunder Shoe Corp. (1 Cir. 1954) 211 F.2d 284. Compare with NLRB v. Alamo White Truck Service Inc. (5 Cir. 1959) 273 F.2d 238, where the circumstances were insufficient to constitute the purchaser a successor employer.

bound by the certification which bound his predecessor as to those employees.

The problem we face is that which arises when we have both a new owner[8] and a substantial change in the personnel of the employee unit. While other courts have wrestled with this problem the situations before them have been confused by the fact that in most cases either the change in ownership or the change in the employee personnel has been brought about under circumstances suggesting a lack of good faith and an attempt, on the part of the employer, to avoid the effect of the certification.[9] Here there is no such suggestion.

■ The controlling question here, it would seem to us, is whether the new owner may rationally be said in substance, as to the unit in question, to have taken over and succeeded to his predecessor's employees. If he has not—if, on the contrary, he has within the unit in question secured his own employees—then he is not, as to the employees in question, a successor. He is their original employer. In such case both the employer and the employee unit are strangers to the certification and to the election upon which it was based. Nothing remains of the relationship to which the certification attached. Under such circumstances, in our judgment, the certification cannot stand.

In the case before us it cannot rationally be said that the company has taken over and succeeded to Westward's salesman unit. Out of the twelve Westward salesmen only three, after interviews, were employed. It is clear from the record that they were not employed because of their Westward connection but because Stepp thought that they were the best he could get to fill out his sales force. Furthermore, half of the new employee unit consisted of men who already were Stepp employees. Even assuming that a Westward employment status continued to attach to the three Westward salesmen, still the character of the new unit clearly was more Stepp than Westward.

We conclude that the respondent did not violate § 8(a) (5) and (1) of the National Labor Relations Act, supra, by denying recognition and bargaining rights to the Union and that the Board's order in this respect is not entitled to enforcement.

■ The Board's order deals with a further alleged violation. The Union sought to compel respondent to hire all of Westward's salesmen. When Stepp refused, a picket line was placed around the showroom. Glen Jones, a Union member and one of the three Westward salesmen hired by respondent, refused to cross the picket line. He was told that he would have to come to work or be terminated. He did not come to work and was terminated. The Board concluded that respondent had violated § 8(a) (3) and (1) of the Labor Act, supra.[10] It ordered respondent to cease and desist from such practices and to offer reinstatement to Jones. This was not error. In this respect the Board's order is entitled to enforcement.

It is so ordered.

8. Respondent contends for several reasons that this case lacks the continuity of business operations which is, under the authorities cited in footnote 7, one of the elements essential to constitute the new owner a successor employer. This question we need not decide since for other reasons we hold respondent not to be a successor employer.

9. NLRB v. Armato, supra, note 6 (prior owner and son retained as supervisory employees); NLRB v. Auto Ventshade, Inc., supra, note 6 (sale by father to son and son-in-law).

10. 29 U.S.C. § 158(a) (3) and (1). Section 158(a) (3) provides in part that it shall be an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization."