**C. H. GUENTHER & SON, INC. d/b/a Pioneer Flour Mills, Petitioner-Cross Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.**

**No. 27495.**

United States Court of Appeals, Fifth Circuit.

June 1, 1970.

984

Allen P. Schoolfield, Jr., Dallas, Tex., John H. Wood, Jr., San Antonio, Tex., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Abigail C. Basker, Washington, D. C., N.L.R.B., Clifford W. Potter, Director, N.L.R.B., Houston, Tex., for respondent.

Before WISDOM, GOLDBERG, and INGRAHAM, Circuit Judges.

WISDOM, Circuit Judge:

This case is before the Court upon petition to review an order of the National Labor Relations Board issued against C. H. Guenther & Son, Inc., doing business as Pioneer Flour Mills in San Antonio, Texas. 174 N.L.R.B. No. 174 (1969). In its cross-appeal, the Board asks for full enforcement of its order.

The National Labor Relations Board found that the Company violated Section 8(a) (5) and (1) of the National Labor Relations Act by refusing to recognize the Union, Brewery Workers Local Un-

ion No. 110, after an economic strike, and by refusing to furnish it with information relevant to the conduct of collective bargaining negotiations. The Board further found that the Company violated Section 8(a) (3) and (1) of the Act by discriminatorily refusing to reinstate strikers Wilburn, Samudio, and Woytasczyk at the end of the strike, by failing to recall 14 strikers when their jobs became available upon the departure of temporary or permanent replacements, and by discriminatorily reducing the seniority and other benefits of Robles and Villarreal after they were reinstated. (The Trial Examiner had not found an 8(a) (3) and (1) violation in the failure to recall 11 of the strikers because their replacements, although departed, had been "permanent").

### I.

▮ An employer may not, upon termination of an economic strike, refuse to reinstate the strikers because of their participation in the strike. Phelps Dodge Corp. v. NLRB, 1941, 313 U.S. 177, 189, 61 S.Ct. 845, 85 L.Ed. 1271; NLRB v. Albritton Eng. Corp., 5 Cir. 1965, 340 F.2d 281, 283, cert. denied, 382 U.S. 815, 86 S.Ct. 31, 15 L.Ed.2d 62; NLRB v. Marydale Products Co., 5 Cir. 1963, 311 F.2d 890, 891–892, cert. denied, 375 U.S. 817, 84 S.Ct. 53, 11 L.Ed. 2d 52. It is also settled that although an employer may hire permanent replacements during the course of the strike in order to continue his business, and is not bound to discharge those replacements in order to create vacancies for strikers wishing to return to work, he may not resort to antiunion considerations in determining which of the strikers shall return to fill existing vacancies. NLRB v. MacKay Radio & Tel. Co., 1938, 304 U.S. 333, 345–346, 88 S.Ct. 904, 82 L.Ed. 1381.

Ample evidence supports the Board's finding that the Company refused to reinstate Wilburn, Samudio, and Woytasczyk upon termination of the strike for discriminatory reasons, in violation of Section 8(a) (3) and (1) of the Act.

### II.

Some of the replacements whom the Company hired during the strike began leaving shortly after the strike terminated. Although almost all of the strikers made unconditional requests for reinstatement, and although the Union made such an offer on behalf of all of the strikers and continued its efforts to obtain their reinstatement throughout the six months following the strike, the Company did not reinstate strikers to fill the jobs vacated by the replacements, but hired instead new employees who had never worked for the Company. The Board determined that 3 of the replacements had only been temporary, and that the remaining 11 had been permanent. It further determined that both temporarily and permanently replaced economic strikers are entitled to reinstatement upon the departure of their replacements, and therefore that the Company violated Section 8(a) (3) and (1) of the Act by hiring new employees, rather than strikers, to fill the vacancies left by the departure of the 14 replacements.

▮ Economic strikers retain their employee status and are entitled to reinstatement upon the departure of their permanent replacements. NLRB v. Fleetwood Trailer Co., 1967, 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614; Laidlaw Corp. v. NLRB, 7 Cir. 1969, 414 F.2d 99, cert. denied, 1970, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100; American Machinery Corp. v. NLRB, 174 N.L.R.B. No. 25 (1969), enforced 5 Cir. 1970, 424 F.2d 1321. Substantial evidence supports the Board's finding that the eleven strikers in question wanted their jobs back, and the Company failed to meet its burden of establishing that there was a legitimate and serious reason for not reinstating these employees.

▮ The Company had a 60-day training period for new employees. Three of the replacements hired during the course of the strike failed to complete this training period, and were terminated between February 14 and March 2. In these circumstances, the Board properly

found that these three replacements were not permanent replacements for strikers, but only temporary replacements. Kansas Milling Co., 97 N.L.R.B. 219, 226 (1951). The Company's failure to reinstate the strikers whose positions they had vacated was unlawful. NLRB v. Marydale Products, 5 Cir. 1963, 311 F.2d 890, cert. denied, 375 U.S. 817, 84 S.Ct. 53.

## III.

The Company did reinstate two of the strikers, Robles and Villarreal, upon the departure of their permanent replacements. Ten days later they were informed that because of a "new law" they would have to fill out application forms, would not be covered by insurance for 30 days, and would lose their seniority and vacation benefits. In short, they were treated as new employees. Failure to accord these two employees full and complete reinstatement was clearly discriminatory and unlawful.

## IV.

Substantial evidence on the record as a whole supports the Board's findings that the Company had no valid basis for doubting the Union's majority status.

Prior to 1959, Congress provided in Section 9(c) (3) of the Labor Management Relations Act that "Employees on strike who are not entitled to reinstatement shall not be eligible to vote." Accordingly, the Board concluded that permanently replaced economic strikers were not to be considered as part of the bargaining unit when determining the Union's majority status. Stoner Rubber Co. Inc., 123 N.L.R.B. 1440 (1959). In 1959, however, Congress amended Section 9(c) (3) of the Act to provide that

> Employees engaged in an economic strike who are not entitled to reinstatement shall be eligible to vote under such regulations as the Board shall find are consistent with the purpose and provisions of this Act in any election conducted within twelve months after the commencement of the strike.

The Board has subsequently formulated several principles to determine voting eligibility. See NLRB Twenty-fifth Annual Report 47 (1960); Twenty-eighth Annual Report 54–55 (1963). But it has continued to exclude permanently replaced economic strikers from the bargaining unit when weighing an employer's good faith in doubting the Union's majority status. See, e. g., Titan Metal Manufacturing Co., 135 N.L.R.B. 196 (1962).

The Board has seen fit in this case to reverse that policy and require inclusion of permanently replaced economic strikers in the bargaining unit when the Union's majority status is challenged. The Company contends that such a change in policy is tantamount to a "rule" with continued prospective effect and can only be accomplished by the Board in accordance with the requirements of the Administrative Procedure Act. The Company additionally contends that the Board's reversal of its prior holdings in this regard cannot retroactively change the good faith of the Company's refusal to bargain under the law as it existed at that time. In American Machinery v. NLRB this Court disposed of a similar contention:

> We subscribe to the views expressed by Judge Friendly in NLRB v. A.P.W. Products Co., 2 Cir. 1963, 316 F.2d 899, 905:
>
> > [W]hen an administrative agency makes law as a legislature would, it must follow the rule-making procedure * * * and when it makes law as a court would, it must follow the adjudicative procedure * * *; whether to use one method of law making or the other is a question of judgment, not of power.

In most situations an administrative agency must be allowed some flexibility in deciding whether adjudication or rule-making is the proper course to pursue. The long shadows of *Fleetwood* and *Laidlaw* presaged the Board's decision in this case. We cannot say that here the Board abused its discre-

tion or violated the Administrative Procedure Act.

*American Machinery, supra* 424 F.2d at 1330.

As stated in Securities and Exchange Comm. v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995, " * * such retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles." 332 U.S. at 203, 67 S.Ct. of 1581. Section 9(c) (3) of the Act demonstrates a congressional desire that economic strikers not entitled to reinstatement be permitted to vote in an election. Since the Board has carried out that desire, *see* W. Wilton Wood, Inc., 127 N.L.R.B. 1675; NLRB Twenty-fifth Annual Report 47 (1960); Twenty-eighth Annual Report 54–55 (1963), logic requires that such employees also be included in the unit when determining whether the Union continues to enjoy majority status. In both cases, the question is which employees are properly part of the bargaining unit. Section 2(3) of the Act, moreover, provides that the term "employee" shall include "any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute * * * and who has not obtained any other regular and substantially equivalent employment * * *." As a result of this provision and the Supreme Court's *Fleetwood* decision, *Laidlaw* and our decision in *American Machinery* teach that permanently replaced strikers retain an expectation of future employment until they have surrendered their interests. Thus, it is appropriate to include them in the bargaining unit. We conclude that to deny enforcement of the Board's order to bargain in good faith would be to say that the Board lacks the power to enforce the standards of the Act in an adjudicatory proceeding.

In this case, requiring the Company to bargain with the Union upon request for a reasonable period of time will not unduly burden the Company. At the same time, it is the only remedy which can restore the *status quo ante*, and dissipate the effects of the Company's unlawful withdrawal of recognition from the Union. Thus, whether or not the Company in good faith relied on earlier Board decisions, the Board drew the proper balance, and its bargaining order should be enforced.

The petition to review is denied. The Board order is enforced in full.