NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

EDJO, INC., d/b/a Jose Costa
Trucking, Respondent.

No. 79–7002.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 1980.

Decided Oct. 28, 1980.

Kenneth B. Hipp, N. L. R. B., Washington, D. C., for petitioner; Elliott Moore, N. L. R. B., Washington, D. C., on brief.

Mark D. Jordan, Santa Rosa, Cal., for respondent.

Before SNEED and POOLE, Circuit Judges, and BLUMENFELD,* District Judge.

POOLE, Circuit Judge:

The National Labor Relations Board (the Board) petitions for enforcement of its order requiring Edjo, Inc. (Edjo) to bargain upon request with Teamsters Local 137 (Local 137), to make whole the employees in the bargaining unit to which this case relates by remitting all pension contributions and other wages or benefits lost as a result of Edjo's alleged unfair labor practices, and to post appropriate notices. The Board's order followed its decision that Edjo was a successor to Joe Costa Trucking Co. (Costa Trucking) and that "Edjo violated Section 8(a)(5) and (1) of the [National Labor Relations] Act by making unilateral changes in the terms and conditions of employment of its employees at a time when it was legally bound, by virtue of its successor status, to bargain with the Union concerning any such changes." *Joe Costa Trucking Co.*, 238 NLRB No. 207, slip op. at 3, 1978–79 NLRB Dec. (CCH) ¶¶ 15,091–92 (Sept. 29, 1978). The Board rejected Edjo's defense that it was not required to bargain with Local 137 or to honor the terms of a collective bargaining agreement that Costa Trucking had entered into because it held a good–faith doubt as to the union's continued majority status.

In the trial before an Administrative Law Judge the General Counsel's legal theory was that Edjo was the *alter ego* of Costa Trucking and hence was required to assume the latter's collective bargaining agreement. The ALJ rejected the *alter ego* theory[1] but held, however, that Edjo was a successor to Costa Trucking and as such was required, before fixing terms, to recognize and bargain with the exclusive bargaining representative of its predecessor's employees—all of whom had been retained.

---

* Honorable M. Joseph Blumenfeld, Senior United States District Judge for the District of Connecticut, sitting by designation.

1. The Board agreed with the ALJ's conclusion on this point, and that holding is not disputed before this court.

With minor modifications, the Board affirmed the ALJ's decision and order.

## THE FACTS

The Board adopted the ALJ's pertinent findings of fact. Since they are supported by substantial evidence, they may not be disturbed by this court. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). The facts are as follows.

Joe Costa established a trucking business in 1953 with headquarters in Arcata, California, and later incorporated it as Joe Costa Trucking Co. In 1977 Costa retired and sold the company to Edjo, a corporation which he had formerly owned and which had long enjoyed a close business relationship with Costa Trucking. Since at least July 1, 1973, Costa Trucking had recognized Local 137 as the exclusive bargaining agent for its truck drivers and had entered into two collective bargaining agreements. During the term of the second agreement Costa sold Costa Trucking to Edjo.

All of Costa Trucking's twenty–one drivers were retained after the sale of stock. Eight new drivers were hired immediately. Local 137 requested Edjo to recognize it as the representative of the employees. By letter dated October 25, 1977, Edjo refused to recognize or bargain with the union. The company unilaterally discontinued payments to the union pension fund on behalf of the Costa Trucking drivers who had been retained, although such payments were a condition of employment under Costa Trucking's contract with the union. At about the same time, the union filed an unfair labor practice charge alleging that Edjo, "as a successor to Joe Costa Trucking has failed and refused to recognize and bargain with Teamsters Local 137." [2]

## DISCUSSION

█ We note at the outset that Edjo has no duty to adopt the substantive terms of the collective bargaining agreement between Costa Trucking and the union.[3] Both the Administrative Law Judge and the Board carefully considered the question and found that Edjo was a successor employer. This finding was supported by substantial evidence and is not disputed by the parties. The United States Supreme Court has held that a successor employer is not bound by the terms of a preexisting contract unless the Board finds as a matter of fact that it has assumed that contract. *N. L. R. B. v. Burns International Security Services, Inc.*, 406 U.S. 272, 282–84, 92 S.Ct. 1571, 1579–1580, 32 L.Ed.2d 61 (1972). The Board did not so find in this case, and it does not contend that Edjo was bound by the terms of the Costa contract.

█ The first question presented, then, is whether Edjo had a duty to recognize and to bargain with Local 137. It is well settled that the Board may order a successor employer to bargain with the incumbent union where the bargaining unit remains unchanged and a majority of the employees hired by the new employer are represented

---

2. In an amended charge filed on November 28, 1977, the union named both Costa Trucking and Edjo as the employers against whom the charge was brought, and alleged that "[w]ithin the past six months Joe Costa Trucking and Edjo, Inc. d/b/a Jose Costa Trucking have refused to bargain with Teamsters Local 137 as the representative of their employees in an appropriate bargaining unit."

3. Judge Blumenfeld would bind Edjo to that contract on the grounds that it is not a successor employer at all. His approach would grant relief sought by neither party, on grounds urged by neither party. However, we find this rationale creates its own problems in that it too rigidly characterizes the relations involved. We therefore prefer to view it primarily in the light of labor -management relations, not bound to the structures of corporate law because of the form in which the employer has organized its business. The United States Supreme Court has impliedly recognized that a situation such as this one may properly be treated as a successorship question, and that in such situations the question whether a preexisting labor contract has been assumed will properly be a question for determination by the Board. *N. L. R. B. v. Burns Int'l. Security Services, Inc.*, 406 U.S. 272, 291, 92 S.Ct. 1571, 1584, 32 L.Ed.2d 61 (1972). We therefore prefer to defer to the Board's determination in this case that Edjo is a successor employer and that it has not assumed the Costa contract.

by a certified bargaining agent. *Burns, supra,* at 281, 92 S.Ct. at 1579. Where the same employer is involved throughout, Board certification gives rise to an almost conclusive presumption that the union continues to represent a majority for a reasonable time. After the passage of a reasonable time, the presumption may be rebutted by a showing that the union in fact no longer represents a majority, or that there are circumstances affording a reasonable basis for good faith doubt about the majority. *N. L. R. B. v. Denham,* 469 F.2d 239, 244 (9th Cir. 1972). A change in employer does not alter the basic situation:

> It has been consistently held that a mere change of employers or of ownership in the employing industry is not such an "unusual circumstance" as to affect the force of the Board's certification within the normal operative period if a majority of employees after the change of ownership or management were employed by the preceding employer. *Burns, supra,* 406 U.S. at 279, 92 S.Ct. at 1577.

The same rules apply where the union has been recognized voluntarily by the employer. *Denham, supra,* at 244.

 Local 137 was the recognized bargaining agent for the Costa Trucking employees. When Edjo acquired Costa Trucking, it retained all twenty—one employees and immediately hired eight more. Thus, when Edjo refused to bargain with Local 137, it had a full complement of employees (*cf. Pacific Hide & Fur Depot, Inc. v. N. L. R. B.,* 553 F.2d 609 (9th Cir. 1977)), a majority of whom were former Costa Trucking employees represented by Local 137. The Board accordingly applied a rebuttable presumption that Local 137 continued to represent a majority of the employees. Edjo claimed to have a reasonable basis for good faith doubt as to the union's majority status: it offered to prove that eight Costa Trucking employees had voiced dissatisfaction with the union, and urged that when these eight were combined with the eight newly hired employees, a majority of the workforce should be found not to support the union. The Board, however, applied the presumption that newly hired employees

support the union in the same proportion as did the original employees. Edjo was unable to overcome this presumption; the Board therefore rejected its defense.

The "new hire" presumption applied by the Board in this case has generally been used in situations of high turnover (*see, e. g., N. L. R. B. v. Tahoe Nugget,* 584 F.2d 293, 306 (9th Cir. 1978)), personnel expansion, and replacement of striking employees (*see, e. g., N. L. R. B. v. Crimptex, Inc.,* 517 F.2d 501, 503 n. 3 (1st Cir. 1975)). Edjo contends that its application to this case will overrule *Burns* sub silentio and require any successor employer to bargain with the incumbent union. This contention is without merit: it ignores the fact that the new hire presumption will arise in connection with a successor's duty to bargain *only* if a majority of the successor's employees are holdovers from the predecessor and were represented by the union. Thus limited, the Board's position is consistent with *Burns* and leaves a successor three ways to overcome the paired presumptions:

1. He may demonstrate that less than a majority of his employees were employed by his predecessor.

2. Alternatively, he may show that a majority of the holdover employees reject the union (and thus imply that a majority of the newly hired employees also reject the union).

3. Finally, he may demonstrate that the newly hired employees in fact reject the union, thus overcoming the new hire presumption.

This approach minimizes disruptions in labor—management relations and adequately balances the rights of the employer, the original employees, and the newly hired employees. *See Pacific Hide, supra.* Since Edjo made none of the permissible showings, the Board properly rejected its good faith doubt defense.

We turn finally to the question whether Edjo was entitled unilaterally to make changes in the terms and conditions of employment before bargaining with the Teamsters. It is now well settled that, where the

employer retains all of the employees from his predecessor's bargaining unit, it is appropriate that he first consult with the collective bargaining agent before altering the terms and conditions of employment. *Burns, supra,* 406 U.S. at 294–95, 92 S.Ct. at 1585–1586; *Denham, supra,* at 247. The Board properly found that Edjo was within this requirement inasmuch as it is undisputed that Edjo retained all Costa Trucking employees.

### CONCLUSION

As a successor employer, Edjo had no obligation to accept its predecessor's labor agreement. It did, however, on the facts of this case, have a duty to bargain with the union and to consult with it before unilaterally changing the terms and conditions of employment. The order of the N.L.R.B. is therefore enforced.

BLUMENFELD, Senior District Judge (concurring in the result only):

I concur in the result. I also agree with the final conclusion that the respondent on the facts of this case had a duty to bargain with the union and to consult with it before unilaterally changing the terms and conditions of employment.

However, I am of the opinion that the duty to bargain about a change in the terms and conditions of the employment was in no way conditioned on the employer's good faith doubt about whether the affected employees were represented by the union. Consequently, whether the Board properly applied a presumption that a certain proportion of "new hires" would favor the union is irrelevant. An explanation of my view requires only a brief explication of the facts. When, as set forth in the majority opinion, "in 1977 Costa retired and sold the company to Edjo," that was accomplished by a sale of all of the shares of stock in Costa owned by Mr. Costa and his wife. Furthermore, not only were all of Costa Trucking's 21 drivers retained on Costa's payroll after that sale, the drivers continued to do the same work as before out of the same location. There were no changed

conditions at all created by the shift of stock. The only change is that the legend "Subsidiary of Edjo" was added under "Costa Trucking" on the building where the business is conducted and on the Costa trucks. The record is replete with other facts consistent with the legal reality. Costa Trucking was not dissolved, nor was it merged into Edjo—its trucking operations continued in the same corporate entity and in the same way as before under the same PUC certificate. Edjo became the parent of Costa Trucking, not its successor.

In *General Teamsters, Chauffeurs and Helpers, Local Union No. 249 v. Bill's Trucking, Inc.,* 493 F.2d 956 (3d Cir. 1974), the court faced a set of facts nearly identical to those of the instant case. There it was alleged that the sole stockholder in a trucking corporation known as ETI sold all of ETI's issued and outstanding stock to one William Fiore, who in turn transferred the stock to a corporation of which he was sole stockholder. ETI had entered into a collective bargaining agreement with the Teamsters that was in effect at the time of the sale. Within 30 days the name of the corporation was changed from ETI to Bill's Trucking, Inc. (BTI). When BTI discharged nine truck drivers who had been employed by ETI, the union brought a breach of contract action against BTI under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The district court, treating a motion to dismiss as a motion for summary judgment, dismissed the complaint on the ground that the labor agreement was terminated by the sale of stock and change of name.

The Third Circuit reversed after concluding that material issues of fact remained in dispute and could not be resolved on summary judgment. In trying to guide the district court's handling of the case on remand, Judge Adams wrote:

"The Union's pleadings and affidavits indicate that BTI, far from being a distinct corporate entity, was the 'same corporation' as ETI. Were the district court to find, after considering the evidence, that such absolute identity of business enterprise existed, both our national labor

law and general corporation law—and perhaps plain common sense—would require the enforcement against BTI of the Union–ETI contract. . . .

"...

"... [W]here, as here alleged, there is a simple purchase of stock, followed only by a change in corporate name and some minor changes in business operations, the policies of our national labor law weigh heavily in favor of a doctrine that preserves intact the employees' bargained–for rights and duties, or at least a portion of them."

*Id.* at 961–63 (footnotes omitted).

This court, in *Bartenders and Culinary Workers Union, Local 340 v. Howard Johnson Co.,* 535 F.2d 1160 (9th Cir. 1976), explicitly approved in dicta the portion of *Bill's Trucking* quoted above. *Id.* at 1163 n. 4.

Although this is not an action for breach of contract with a labor union brought under section 301, Edjo, which is managing all of the affairs of Costa was in privity with it insofar as relations with the employees of the union are concerned. The collective bargaining agreement between Costa Trucking and the union was still in effect at the time of the sale. Consequently, as a matter of labor law, even had Edjo immediately requested the union to bargain over changes in terms or conditions of employment, the union could have refused without being chargeable with an unfair labor practice. 29 U.S.C. § 158(d).[1] By unilaterally modifying the terms and conditions of employment, the employer had committed an unfair labor practice in violation of section 8(a)(5). *See N. L. R. B. v. Katz,* 369 U.S. 736, 745, 82 S.Ct. 1107, 1112, 8 L.Ed.2d 230 (1962).

Furthermore, even if Edjo is to be regarded as Costa Trucking's successor, the

same result would be reached without resorting to any presumption about the new hires to challenge the employees' allegation of a "good faith doubt." *N. L. R. B. v. Burns* teaches, 406 U.S. 294–95, 92 S.Ct. at 1585–1586;

"Although a successor employer is ordinarily free to set initial terms on which it will hire the employees of a predecessor, there will be instances in which it is perfectly clear that the new employer plans to retain all of the employees in the unit and in which it will *be appropriate to have him initially consult with the employees' bargaining representative before he fixes terms.*" (Emphasis added.)

The majority opinion confirms the view that this is just such a case as the Supreme Court had in mind. There was no need for the Board to consider a presumption about "new hires" even if it did consider this as a "successorship" case.

---

1. 29 U.S.C. § 158(d) reads, in pertinent part:

 "*Provided,* That where there is in effect a collective–bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—. . . ."

 The "unless" conditions (1) and (2) in subsection (d) provide that the party desiring the change shall give 60 days' written notice of the proposed modification or termination, and offers to meet and negotiate with the other party with respect to these.