**K. B. & J. YOUNG'S SUPER MARKETS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 20827.

United States Court of Appeals
Ninth Circuit.
April 28, 1967.

---

1. At the trial the voir dire questioning was conducted exclusively by the Court.

Ted Frame, Frame & Courtney, Coalinga, Cal., for appellant.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Herman M. Levy, Marsha E. Swiss, Attys., N.L.R.B., Washington, D. C., Roy O. Hoffman, Director, N.L.R.B., San Francisco, Cal., for appellee.

Charles M. Arak, Los Angeles, Cal., for intervenor, Butchers Union Local 193, AFL–CIO.

Before HAMLIN, JERTBERG and MERRILL, Circuit Judges.

MERRILL, Circuit Judge:

Petitioner seeks review of an order of the National Labor Relations Board, and the Board cross-petitions for enforcement of its order. 157 N.L.R.B. No. 17 (1966). At issue is the question whether petitioner, as purchaser of a retail food marketing enterprise, became bound by certain collective bargaining obligations of its predecessor.

Hob Nob Stores, Inc., a large retail grocery chain, owned three supermarkets in or near Bakersfield, California, operated under the name of "Kelley's Markets." In April 1964, William and John Young, brothers, bought the three stores. Just prior to the sale, at the direction of the Youngs, all Kelley's em-

ployees were notified that they were discharged effective on the sale date. The sale was completed, the stores shut down for one day, then reopened, still as "Kelley's Markets." Shortly thereafter, petitioner was organized to operate the stores in his own name. While some innovations in methods of handling and marketing merchandise were introduced, essentially the same business was operated in a similar fashion, at the same locations, and the size and duties of the work force did not change substantially.

The meat departments at Kelley's had been covered by a standard collective bargaining agreement with Butchers Union Local 193, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, which by its terms was effective until January 1965.[1] The union demanded recognition by petitioner of its representative status and of the agreement. This was refused by petitioner on the ground of an alleged good faith doubt that the union represented a majority of petitioner's meat department employees.

At the union's behest the Board filed a complaint against petitioner, charging that it had caused Hob Nob to discharge its union employees, that it had failed to recall the employees, that it was the "successor" to Hob Nob for the purposes of the National Labor Relations Act, and that it had refused to bargain with Local 193.

The Trial Examiner and the Board found that there was substantial continuity of identity in the business enterprise, and that petitioner had caused the

discharges for unlawful reasons, to evade bargaining obligations with the union. Petitioner was held to be the "successor" to Hob Nob; accordingly the discharges were found to violate § 8(a)(3) of the N.L.R.A., and the refusal to bargain to violate § 8(a)(5).[2] The remedy ordered was reinstatement with back pay for the discharged personnel and recognition of and bargaining with the union.[3]

■ Petitioner contends that since a substantial change in the personnel of the work force coincided with the sale, it was not bound to recognize the union as bargaining representative under N.L.R.B. v. John Stepp's Friendly Ford, Inc., 338 F.2d 833 (9th Cir. 1964).

■ We cannot agree. Here the record clearly supports the Board's finding that petitioner caused the mass discharge of unit personnel for antiunion reasons. This distinguishes the present case from *Stepp's Friendly Ford.* There the Board merely sought to compel the purchaser to recognize and bargain with the old union, despite a substantial change in the identity of the work force. There was no finding that the discharge of the old employees constituted an unfair labor practice and their reinstatement was not sought. Where, as here, the old employees have been wrongfully discharged, their reinstatement is an appropriate remedy for the unfair labor practice. With such reinstatement ordered, continuity in the identity of the work force may be presumed to follow and an order to recognize and bargain with the union as representative of the present work force is appropriate.

---

1. The standard agreement included a Union Shop clause, an acquisition clause providing for jurisdiction over meat departments or markets acquired by the employer in the future, and a change of ownership clause providing for application of the agreement to a transferee of the employer. The latter provided for thirty days probationary period for the retention of old employees, and for the survival of seniority, vacation and sick leave credit in any event.

2. 49 Stat. 452 (1935), as amended, 29 U.S.C. § 158(a) (3), (5) (1964). Both activities were found to violate 29 U.S.C. § 158(a) (1).

3. The Board did not rule on the General Counsel's contention that petitioner should also be ordered to recognize the existing collective bargaining agreement in its entirety, for the reason that the union did not press this question and expressed a desire to negotiate a new contract.

■ Petitioner contends that the mass discharge was of no significance as an unfair labor practice, since the sale in any event would have caused an automatic termination of the old employment relationship.[4]

■ We find no merit in this contention. John Wiley & Sons v. Livingston, 376 U.S. 543, 551, 84 S.Ct. 909, 11 L.Ed. 2d 898 (1964), establishes that where there is substantial continuity of identity in the employing enterprise a change in ownership does not, by operation of law, automatically terminate all rights of the old employees [5] and that such rights may remain the legitimate subject of dispute. Importantly included in such potentially bargainable issues, in our view, is continuity of employment, here expressly provided for in the collective bargaining contract with Hob Nob, see footnote 1, supra.

Since the right to continued employment does not automatically terminate on change in ownership, it must terminate by act of the parties and such acts accordingly become relevant. Under the circumstances we see no valid distinction between a discharge by petitioner and a discharge by Hob Nob at petitioner's behest on the eve of the changeover.

■ Petitioner protests that in determining the existence of substantial continuity of identity in the employing enterprise in the *Wiley* sense, continuity of employment is itself a relevent if not essential factor. We cannot agree under the facts of this case. Petitioner's argument amounts to a bootstrap contention that a discriminatory interruption of employment cannot be challenged since it did in fact occur.

■ The Board also found discriminatory discharges of two individuals who were not former Hob Nob employees: Imogene Brewton and Jack Baldwin. Petitioner contends that in these instances it was not unlawfully motivated, and that these discharges were made for legitimate business reasons. In our judgment the Board's findings in these respects are supported by substantial evidence on the record as a whole. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

We conclude that the Board's order is entitled to enforcement. It is so ordered.

---

4. Petitioner's position is that if an unfair labor practice is to be found in its failure to continue employment of the old employees (or to offer them reinstatement) it must be through a discriminatory refusal to hire. It is well established that § 8(a) (3) discrimination refers as well to applicants for employment as to existing employees. Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 61 S.Ct. 845, 85 L. Ed. 1271 (1941) ; Piasecki Aircraft Corp. v. NLRB, 280 F.2d 575 (3d Cir. 1960), cert. denied, 364 U.S. 933, 81 S.Ct. 380, 5 L.Ed.2d 365 (1961). In the present case there is some evidence of discriminatory refusal to hire, but the Board has made no general finding of such, relying solely on the discharge.

5. The Supreme Court stated:
"While the principles of law governing ordinary contracts would not bind to a contract an unconsenting successor to a contracting party, a collective bargaining agreement is not an ordinary contract." 376 U.S. at 550, 84 S.Ct. at The Court also observed:
"The objectives of national labor policy, reflected in established principles of federal law, require that the rightful prerogative of owners independently to rearrange their businesses and even eliminate themselves as employers be balanced by some protection to the employees * * *." 376 U.S. at 549, 84 S.Ct. at 914.
While the immediate issue was the right to arbitration, the opinion states:
"It would be inconsistent with our holding that the obligation to arbitrate survived the merger were we to hold that the fact of the merger, without more, removed claims otherwise plainly arbitrable from the scope of the arbitration clause." 376 U.S. at 554, 84 S.Ct. at 917.