**TRI STATE MAINTENANCE CORPO-
RATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 21655.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 10, 1968.

Decided Dec. 18, 1968.

Mr. Ross O'Donoghue, Washington, D. C., for petitioner. Mr. George A. Fisher, Washington, D. C., also entered an appearance for petitioner.

Mr. Robert Lieber, Attorney, National Labor Relations Board, of the bar of the Supreme Court of California, pro hac vice, by special leave of court, for respondent. Messrs. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Michael N. Sohn, Attorney, National Labor Relations Board, were on the brief for respondent. Mr. Allen Berk, Attorney, National Labor Relations Board, also entered an appearance for respondent.

Before BURGER, WRIGHT and TAMM, Circuit Judges.

TAMM, Circuit Judge:

This case comes before us on a petition to review and set aside a Decision and Order of the National Labor Relations Board (hereinafter "Board') (167 N.L.R.B. No. 140). After full consideration of all the pleadings involved we conclude that the Board's Decision and Order must be affirmed only insofar as it is consistent with the dictates of this opinion and that it must be disregarded insofar as it bases its Order upon an invalid and untenable conclusion of law. (Conclusion of Law #3, Board's Decision at 9.)

Since the dispute in this case is largely factual the facts and circumstances involved will be set out in detail. On May 17, 1966, petitioner was awarded a contract with the General Services Administration (hereinafter "GSA") for the

maintenance service of the Veterans Administration Building in the District of Columbia (Vermont Avenue and H Street, N. W.). This was a one-year contract, commencing on June 1, 1966. From June 1, 1965, until May 31, 1966, this particular maintenance contract was performed by the Frugal Company (hereinafter "Frugal"), a sole proprietorship (Tr. 15). During this period the Government Service Employees Union, Local 536, affiliated with Building Service Employees' Union, AFL–CIO (hereinafter "Union") successfully organized Frugal's maintenance employees at this location. On March 28, 1966, Frugal and the Union signed a collective bargaining agreement which included a union-shop clause requiring union membership after thirty days of employment. As a result, on May 31, 1966, all of Frugal's employees were members of the Union (Board's Decision at 4).

The GSA had become disenchanted with the quality of Frugal's cleaning operation. (Tr. 188, 204–5, 209, 330–31, 336.) Petitioner was told that Frugal, true to its name, was employing too small a work force and that it had let the building itself lapse into quite poor condition (Brief for Petitioner at 3; Tr. 37–38, 267, 274, 276, 285, 296–7, 331). In addition our petitioner was informed that it would probably need the use of a larger work force than Frugal had been employing.[1]

Thus, between May 17, 1966, and June 1, 1966, petitioner needed to hire approximately seventy employees. The GSA suggested that it was "industry custom and practice" for the incoming contractor to hire the employees of the outgoing contractor as a group. Tri State, however, decided that it would require individual applications from each of Frugal's employees who wished to continue working at the Veterans Administration Building. Petitioner then selected one Richard Turner, the very man that GSA felt was largely responsible for the poor condition of the building (Tr. 209, 296–97, 336), to distribute applications throughout the building. There is a great deal of conflict in the testimony adduced at the administrative hearing as to the availability and access of these applications (Tr. 47, 77, 169–70, 219, 245). The Board concluded that Tri State purposely limited their availability in an attempt to hire less than a majority of Frugal's employees and thus avoid having to deal with the Union (Board's Decision at 5, 6.). The end result, after a series of correspondence between the Union and the respondent, was that on June 1, 1966, respondent had hired only twenty-three of Frugal's forty or more employees. More specifically, on the afternoon of June 1, 1966, mass confusion reigned at the Veterans Administration Building.[2] The Frugal employees set up picket lines and several Frugal employees tried to go to work and were told to wait for interviews (Tr. 102–03, 156, 170). The Union then filed a charge with the Board and a complaint was issued on August 31, 1966, alleging violation of Section 8(a) (1) and (3) of the Act.[3] On November 3, 1966, the trial examiner allowed the complaint to be amended to allege that Tri State also violated Section

[1]. The record reveals that Frugal's work force had dwindled to an average of between thirty-eight and forty-eight in the final few months of their contract (Tr. 331–32).

[2]. The record reflects much dispute as to exactly what occurred at the Veterans Administration Building on June 1, 1966 (Tr. 101–03, 156–57, 169–71, 221–23, 247).

[3]. 29 U.S.C. § 158(a) (1), (3) (1964), which reads in pertinent part:

(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title * * * (3) by discrimination in regard to hire or tenure of employment * * * to * * * discourage membership in any labor organization * * *.

8(a) (5) of the Act.[4] On December 19, 1966, the trial examiner issued his decision which found that respondent had violated Section 8(a) (5) but that it had not violated Section 8(a) (1) and (3). Subsequent thereto the Board adopted the examiner's findings of fact[5] but concluded that the respondent did violate Section 8(a) (1) and (3). The Board refused to reach the question of whether Section 8(a) (5) was violated since it was largely moot and unnecessary for the Board's determination (Board's Decision at 7, 8). Thus, as its remedy the Board ordered backpay from June 1, 1966, until August 17, 1966,[6] for all Frugal employees who occupied such status on May 31, 1966, and who were not hired by respondent on June 1, 1966 (Board's Order at 8). It is from this Decision and Order that petitioner now seeks relief.

## I

We feel that the Board bottomed its decision on two separate and distinct bases. Thus, the Board ruled that

[b]y refusing to hire employees of the Frugal Company *as a group*, Respondent (Tri State) committed an unfair labor practice within the meaning of Section 8(a) (3) and (1) of the Act. * * * (Emphasis added.)[7]

In the long history of labor law in this jurisdiction there simply is no authority which would require a maintenance corporation which contracts to service a building for a one year period to hire "en masse" the entire work force employed by the corporation or sole proprietor which or who had contracted to service the building for the previous one year period.

See Amalgamated Clothing Workers of America v. NLRB, 112 U.S.App.D.C. 252, 302 F.2d 186 (1962); Piasecki Aircraft Corp. v. NLRB, 280 F.2d 575 (3rd Cir. 1960), cert. denied, 364 U.S. 933, 81 S. Ct. 380, 5 L.Ed.2d 365 (1961); NLRB v. New England Tank Industries, Inc., 302 F.2d 273 (1st Cir.), cert. denied, 371 U.S. 875, 83 S.Ct. 147, 9 L.Ed.2d 114 (1962). Here, Tri State had no privity of contract with Frugal or Frugal's employees and it was not a "successor employer" that bought out the business of another. John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Perma Vinyl Corp., 65 L.R.R.M. 1168 (NLRB, May 27, 1967). In fact, GSA expressed dissatisfaction at the work being done by the very people the Board would require petitioner to hire as a group (Tr. 272, 297). Tri State was clearly free to require individual applications which would seem almost essential for their bookkeeping process. It should be noted also that the "industry custom" of hiring imposes no binding obligation on petitioner. Moreover, the Board retreats from this proposition in the last and summation paragraph in its brief before this court (Brief for Respondent at 15). To the extent that the National Labor Relations Board bases its Decision and Order on the proposition that a successor contractor must hire "en masse" or "as a group" the entire work force of its predecessor contractor, it must be disregarded.

## II

The second ground for the Board's Decision is a finding that it

---

4. 29 U.S.C. § 158(a) (5) (1964), which reads in pertinent part:
   (a) It shall be an unfair labor practice for an employer—
   (5) to refuse to bargain collectively with the representatives of his employees * * *.

5. The Board reversed the trial examiner as to the testimony about Mr. Turner. The Board specifically found that Mr. Turner was an agent of Tri State in his activities in the Veterans Administration Building. Board's Decision at 4, 5. This court notes in passing the lack of explanation in the record below as to why Mr. Turner did not testify at the hearing.

6. Tri State, by letter, offered all former Frugal employees opportunity for employment on August 17, 1966. The Board held that this offer cured its violation of the Act as of that date. Board's Decision at 8, 9.

7. Board's Decision at 9.

was Tri State's "intent not to hire most of the Frugal employees because of their Union affiliation." [8] Thus, the Board ordered Tri State to cease and desist from

> [d]iscouraging membership in Government Service Employees Union, Local 536 * * * by refusing to employ any applicant for employment * * * because of membership in, activities for, or sympathies with any such labor organization. * * * [9]

It is well settled that Frugal's employees were entitled to be considered for employment with Tri State on a non-discriminatory basis. Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); K. B. & J. Young's Super Markets, Inc. v. NLRB, 377 F.2d 463 (9th Cir.), cert. denied, 389 U.S. 841, 88 S.Ct. 71, 19 L.Ed.2d 105 (1967). It is thus clear that petitioner did violate the Act if it, as the Board found it did, refused employment to Frugal's employees because of their union membership. It is with reference to this allegation that the record of the administrative hearing (as reproduced in the joint appendix) is not completely comprehensive. It is replete with incomplete testimony of the witnesses.[10] Nevertheless, our examination of this record reveals that the Board's finding, id est, that appellant refused employment to former Frugal employees because of their union membership, is supported by substantial evidence. Thus, we are bound by this determination even though we might have, were we permitted a de novo review, found a different result.

Upon close and exhaustive inspection of the record below we learn that considerable testimony was adduced showing that many Frugal employees were unable to obtain applications upon request (Tr. 169–70, 245). The record shows that Tri State expressed anti-union animus several times during the contract negotiations (Tr. 315–16, 326–27). There was testimony revealing that Mr. Turner told many Frugal employees that only twenty-two would be retained and that Tri State did not want the Union there (Tr. 98, 99). There was testimony alleging that one employee was refused an application because of her union affiliation (Tr. 90). The testimony showed that Mr. Steube, a Tri State supervisor, told several Frugal employees that Tri State would pay union wages but didn't want any union there (Tr. 107, 160, 221, 223). There was testimony that all the allegedly valuable day-time employees were hired quickly but that the much more numerous and less valuable night-time employees found that there was a dearth of both applications and information about how to apply for employment with Tri State (Tr. 47–49, 138). The record shows also that several Union officers told the Frugal employees that they would be fired or paid less by Tri State (Tr. 113–14, 346). The Board weighed all this conflicting evidence and we feel that its conclusion is supported by substantial evidence in the record. This portion of the Board's Decision will not be disturbed.

We conclude therefore that the Frugal employees described in the Board's Order are entitled to back pay and it shall be awarded. The Board's Order as here modified is affirmed insofar as it is based upon the holding that our petitioner discriminated against the Frugal employees in its hiring process because of their union affiliation. We reject the Board's conclusion insofar as it requires

8. *Id.* at 3.

9. *Id.* at 9, 10.

10. *See, e. g.,* pages 22, 25–26, 28–29 missing out of Mr. Ford's testimony; pages 46, 48 out of Mr. Donahue's testimony; pages; 119–121, 125 out of Mrs. Wallace's testimony; pages 127–129, 137 out of Mr. Baker's testimony; pages 171–173 out of Mrs. Moten's testimony; pages 319–321, 324–325 out of Mr. Zecher's testimony; pages 242, 248–249, 255 out of Mr. Adams' testimony; pages 349–350 out of Mr. Wilhelm's testimony; pages 208, 214 out of Mr. Lancaster's testimony. In addition, an index reflecting the beginning and end of each witness' testimony in the record was nonexistent in the joint appendix presented to us.

that Tri State hire the Frugal employees *as a group.* The Board's Order is therefore

Affirmed as modified.

J. SKELLY WRIGHT, Circuit Judge (concurring in the result).

As I understand the court's opinion, it dismisses the petition to review the Board's orders and orders enforcement. I concur in that result and in much of what the court said. I differ with the court only as to its interpretation of the Board's holding on the retention of the Frugal employees.

The Board's opinion, as I read it, does not hold that petitioner was required as a matter of law to hire Frugal's employees *en masse.* It held simply that "on the basis of the totality of circumstances involved herein" the refusal to hire them as a group pursuant to industry practice was anti-union motivated in violation of Section 8(a) (3) of the Act. 29 U.S.C. § 158(a) (3) (1964).

Danaher, Burger, and Tamm, Circuit Judges, dissented; McGowan, Circuit Judge, dissented in part.