**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL HARVESTER COMPANY, Respondent.**

**Nos. 77–1349, 79–7117.**

United States Court of Appeals, Ninth Circuit.

May 2, 1980.

Linda Dreeben, Atty., N. L. R. B., Washington, D. C., argued for petitioner; Elliott Moore, N. L. R. B., John H. Ferguson, Washington, D. C., on brief.

Charles E. Jones, Phoenix, Ariz., for respondent.

Before KENNEDY, SKOPIL, and ALARCON, Circuit Judges.

KENNEDY, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order directing International Harvester Company to bargain about a decision to alter its marketing structure. The issue is whether International Harvester's decision was a mandatory subject of bargaining. We conclude that the decision was within the prerogative of management. We enforce, however, that part of the order directing the Company to bargain about the effects of the decision on the terms and conditions of employment of employees in a certified bargaining unit at the time of the decision.

For many years International Harvester Company sold all of its trucks through approximately 150 branch offices. The institution of government price controls in 1973 caused the Company to evaluate its traditional marketing emphasis on volume manufacturing and sales. The Company in 1975 was losing approximately $10,000,000 a month. It suspected that sales of large numbers of trucks in a single order, also called "fleet sales," contributed greatly to the losses. The Company found, moreover, that under its system of accountability, there was no way to trace or allocate losses at branch levels among fleet sales, used-truck sales, and retail sales. This tracing was necessary, the Company concluded, to determine which type of sales generated the maximum profit for it. In November, 1975, the Company responded to its conclusions by restructuring its nationwide marketing operation to account more precisely for different types of sales and to increase profits.

There is no contention that this decision was made for any purpose forbidden by the National Labor Relations Act or that it was contrary to the policies of the Act. The only question here is whether the Company had a duty to bargain with a union concerning the reorganization decision.

Responsibility for fleet sales was transferred away from branch offices and assigned to separate administrative structures established within the Company. Sales of used trucks were also transferred to locations away from branch offices. To better control profits at individual branches, the Company began to focus on the return realized on dollars invested in the branch, rather than on volume of sales. Branch managers, having lost control over fleet sales, were given greater opportunity to participate in inventory decisions with respect to standard retail sales. Within four months of these changes, the Company closed four branch offices, converted one branch office to a dealership, and established 28 centers around the country for the sale of used trucks. These management decisions were proved sound, for profits increased. In subsequent months, the Company closed and sold other branch offices.

As a result of the changes instituted by the Company, retail sales representatives in the Phoenix, Arizona branch office lost the opportunity to earn commissions on fleet accounts that were transferred to a new marketing hierarchy and also lost control over fleet orders. The Company transferred the branch office's fleet account executive into the new fleet sales marketing structure, assigning him to a supervisor within that new hierarchy. For a short

time after the transfer, the executive continued to work at the branch office. At collective bargaining sessions the Company stated that because of the changes, the fleet account executive position was no longer a part of the bargaining unit.

Sales Drivers & Help, Local 274, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Union), represented a bargaining unit in the Phoenix branch office consisting of five Company retail sales representative positions and the transferred fleet account executive position. The Union filed a complaint alleging that the Company breached its duty, under 29 U.S.C. § 158(a)(5) and (1), to bargain in good faith by taking the fleet account work and the job classification of fleet account executive out of the bargaining unit without first bargaining with the Union. The Administrative Law Judge found that the Company's decision was not a mandatory subject of bargaining and that, therefore, the Company had no duty to bargain concerning its decision. The ALJ found, however, that the Company committed an unfair labor practice by failing to bargain with the Union regarding the effects of its decision on the bargaining unit employees.

The Board held that the Company had to bargain with the Union about both the marketing decision and its effect on unit employees. After this court remanded the case for additional evidence and there was a second administrative hearing, the Board reaffirmed its decision. It ordered the Company to restore prior employment conditions, to compensate sales representatives for lost commissions, and to bargain in good faith about the decision affecting the marketing structure.

■ The Board's order will be enforced if the Board correctly applied the law and if the Board's findings of fact are supported by substantial evidence. *Los Angeles Marine Hardware Co. v. NLRB*, 602 F.2d 1302, 1305 (9th Cir. 1979). We recognize that the Board's interpretation of the mandatory bargaining provisions is entitled to considerable deference. *Ford Motor Co. v.*

*NLRB*, 441 U.S. 488, 99 S.Ct. 1842, 60 L.Ed.2d 420 (1979). Nevertheless, we conclude that the Board misapplied the law in determining that International Harvester's decision was subject to mandatory bargaining.

■ A company must bargain in good faith over management decisions affecting terms and conditions of employment. 42 U.S.C. § 158(a) and (d); *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 209–10, 85 S.Ct. 398, 402, 13 L.Ed.2d 233 (1964). Management decisions that fundamentally alter the direction of an enterprise, or involve significant reallocation of capital generally are not considered decisions concerning terms and conditions of employment and are not mandatory subjects of bargaining. *See Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. at 223, 85 S.Ct. at 409 (Stewart, J., concurring); *NLRB v. Transmarine Navigation Corp.*, 380 F.2d 933 (9th Cir. 1967). Major shifts in the capital investment or corporate strategy of a company are not mandatory bargaining subjects, even though they may have a profound effect on the conditions of employment. *Local 777, Democratic Union Organizing Committee v. NLRB*, 603 F.2d 862, 884 (D.C.Cir.1978).

In *NLRB v. Transmarine Navigation Corp.* this court held that relocation of a company for economic reasons is not a mandatory subject of bargaining. 380 F.2d at 939. Partial relocation of assets may also be within management prerogative. *See Morrison Cafeterias Consolidated, Inc. v. NLRB*, 431 F.2d 254, 257 (8th Cir. 1970).

■ In this case the transfer of the fleet account executive position and the responsibility for fleet and used truck sales to other management hierarchies was a part of the decision to reorganize marketing. The decision included the movement of used trucks to new locations and the closing and sale of several branch offices. Because the decision involved the sale of significant assets, fundamental changes in marketing structure, and a significant reallocation of capital, it was not a mandatory subject of bar-

gaining. Therefore, the Company had no duty to bargain about the transfers.

The Company concedes, however, that an employer has a duty to bargain about the effects of relocation upon "the rights of the employees whose status will be altered by the managerial decision." *NLRB v. Triumph Curing Center*, 571 F.2d 462, 474 n.11 (9th Cir. 1978) (quoting *NLRB v. Transmarine Navigation Corp.*, 380 F.2d at 939). Accordingly, the Board's decision is enforced insofar as it orders the Company to bargain in good faith about the effects that the changes have had on the terms and conditions of employment of the fleet account executive and the remaining members of the bargaining unit, including such subjects as wages, pension benefits, and seniority. *See NLRB v. Transmarine Navigation Corp.*, 380 F.2d at 939.

ENFORCEMENT GRANTED in part, and DENIED in part.