647 F.2d 905
 107 L.R.R.M. (BNA) 2890, 91 Lab.Cas. P 12,802
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
and
Stationary Engineers, Local 39, International Union of
Operating Engineers, Intervenor,
v.
NEVIS INDUSTRIES, INC., d/b/a Fresno Townehouse, Respondent.
 No. 80-7131.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 9, 1980.
Decided June 8, 1981.
 
 Christine Weiner Peterson, Atty., Washington, D. C., for petitioner.
 John C. Cook, Voltz, Cook & Orenstein, San Francisco, Cal., for respondent.
 On Petition for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board.
 Before SKOPIL and FARRIS, Circuit Judges, and BELLONI,* District Judge.
 SKOPIL, Circuit Judge:
 
 INTRODUCTION
 
 1
 Nevis Industries, Inc. ("Nevis") petitions for review of a decision of the National Labor Relations Board ("the Board"), 246 NLRB No. 167, 103 LRRM 1035 (1979). The Board cross-applies for enforcement of its order.
 
 FACTS
 
 2
 In April 1977 Nevis acquired the Fresno Townehouse hotel. Prior to the acquisition, the Townehouse's engineering employees were represented by Stationary Engineers, Local 39, ("Local 39"). The other service employees were represented by Motel Service Employees, Local 62 ("Local 62").
 
 
 3
 Nevis did not retain the engineers, including the supervisor, Brewer. Nevis refused to bargain with Local 39 regarding employment of the engineers. Nevis retained most of its other employees. It allegedly conditioned retention of one employee, Alford, on his resignation from Local 39. Nevis allegedly attempted to persuade the employees represented by Local 62 to withdraw from that union.
 
 PROCEEDINGS BELOW
 
 4
 The Administrative Law Judge ("ALJ") concluded that Nevis violated section 8(a)(1) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158(a) (1), by attempting to convince its service employees to withdraw from Local 62, and by conditioning Alford's retention on resignation from Local 39. The ALJ held that Nevis violated section 8(a)(1) by refusing to retain Chief Engineer Brewer, and sections 8(a)(1) and (3) by refusing to retain the four engineers because they were members of Local 39. The ALJ held that Nevis violated section 8(a)(5) by refusing to bargain with Local 39.
 
 
 5
 The Board affirmed the ALJ's findings and conclusions. Two members of the Board dissented, and one member concurred specially, in the conclusion that Nevis violated section 8(a)(1) by refusing to retain Chief Engineer Brewer.
 
 
 6
 The Board issued a cease and desist order. It affirmatively directed Nevis to make the engineers whole for lost wages, to offer them immediate reinstatement, and to bargain with Local 39.
 
 ISSUES
 
 7
 1. Does substantial evidence support the Board's finding that Nevis violated section 8(a)(1) by interfering with the rights of the employees it retained?
 
 
 8
 2. Did the Board apply the correct legal standard, and does substantial evidence support its finding that Nevis violated sections 8(a)(1) and (3) by refusing to retain the engineers because they were union members, and to avoid an obligation to bargain with Local 39?
 
 
 9
 3. Did the Board apply the correct legal standard in determining that Nevis violated section 8(a)(1) by refusing to retain Chief Engineer Brewer?4. Did the Board apply the correct legal standard, and does substantial evidence support its finding that Nevis violated sections 8(a)(1) and (5) by refusing to bargain with Local 39?
 
 DISCUSSION
 
 10
 I. Standard of Review.
 
 
 11
 We must enforce the Board's order if the Board correctly applied the law, and if the Board's findings of fact are supported by substantial evidence on the record viewed as a whole. E. g., NLRB v. Big Bear Supermarkets No. 3, 640 F.2d 924, at 931 (9th Cir.), cert. denied, -- U.S. --, 101 S.Ct. 318, 66 L.Ed.2d 147 (1980). The Board's interpretation of the Act is entitled to considerable deference. Ford Motor Co. v. NLRB, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979); NLRB v. International Harvester Co., 618 F.2d 85, 87 (9th Cir. 1980). The Board's findings must be enforced if supported by substantial evidence, even if this court might reach a different conclusion based on the same evidence. Stephens Institute v. NLRB, 620 F.2d 720, 726 (9th Cir.), cert. denied, -- U.S. --, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). This court must not limit its consideration to supporting evidence while excluding contradictory evidence. Stephenson v. NLRB, 614 F.2D 1210, 1214 (9th Cir. 1980).
 
 
 12
 II. Interference With Retained Employees.
 
 
 13
 The Board held that Nevis violated section 8(a)(1) by interfering with the section 7, 29 U.S.C. § 157, rights of the employees it retained.
 
 A. The Service Employees
 
 14
 The Board found that Snider, the manager of the Townehouse, and a subordinate told the banquet waitresses that the Townehouse was going to be non-union. They promised greater benefits than the union had offered. After the takeover, Snider urged the maids to withdraw from Local 62, and threatened to discharge maids who joined Local 62's picket line. The Board held that these acts violated section 8(a)(1).
 
 
 15
 Nevis does not contest the Board's holding as to these acts. This constitutes a waiver. Riverside Press, Inc. v. NLRB, 415 F.2d 281, 284-85 (5th Cir. 1969), cert. denied, 397 U.S. 912, 90 S.Ct. 915, 25 L.Ed.2d 94 (1970).
 
 B. The Retention of Alford
 
 16
 The Board found that Nevis conditioned retention of one employee, Alford, on his resignation from Local 39. Nevis contends that this finding is not supported by substantial evidence on the record as a whole. We disagree.
 
 
 17
 Snider encouraged Alford to resign from Local 39. He originally suggested that Alford resign, after checking with his lawyer as to its feasibility. Snider loaned Alford the company car to deliver his letter of resignation to Local 39.
 
 
 18
 Snider had, on other occasions, made statements consistent with conditioning retention on resignation from the Union. He told Alford at a later date that he would not hire any of the picketing engineers. He threatened the maids with discharge if they joined the strike by Local 62, and circulated a petition of resignation from Local 62, which the maids were to sign.
 
 
 19
 Snider denied that he conditioned Alford's retention on resignation from Local 39. The ALJ discredited his testimony. We will not overturn decisions as to credibility unless shown to be incorrect by a clear preponderance of the evidence. NLRB v. Max Factor & Co., 640 F.2d 197 at 205 (9th Cir. 1980); NLRB v. Inland Empire Meat Co., 611 F.2d 1235, 1238 (9th Cir. 1979).
 
 
 20
 There is substantial evidence on the record viewed as a whole supporting the finding that Nevis violated section 8(a)(1) by conditioning retention of Alford on his resignation from Local 39.III. Refusal to Retain the Engineers.
 
 
 21
 The Board held that Nevis violated sections 8(a)(1) and (3) by refusing to retain the engineers because they were members of Local 39, and to avoid incurring a duty to bargain with that union. Nevis contends that the Board applied an incorrect legal standard in determining the motive underlying the decision not to retain the engineers, and that there is not substantial evidence supporting the finding of an unlawful motive.
 
 
 22
 A. The Standard Governing Unlawful Terminations
 
 
 23
 To establish an unfair labor practice, the General Counsel must show an unlawful motivation either to discourage union membership or to interfere with the exercise of protected rights. Ad Art, Inc. v. NLRB, 645 F.2d 669, at 678 nn.9-10 (9th Cir. 1980).
 
 
 24
 Where a discharge is motivated both by legitimate business considerations and protected activity, this court requires the General Counsel to show that the protected union activity was the dominant or moving cause behind the discharge. Ad Art, Inc., supra at 1285-86; L'Eggs Products, Inc. v. NLRB, 619 F.2d 1337, 1341-42 (9th Cir. 1980); Western Exterminator Co. v. NLRB, 565 F.2d 1114, 1118 (9th Cir. 1977). Other circuits have employed different standards. See Western Exterminator Co., supra at 1118 n.3 (citing cases); Wright Line, a Division of Wright Line, Inc., 251 NLRB No. 150, 105 LRRM 1169, 1170-72 (1980) (same).
 
 
 25
 The Board has recently changed the procedural requirements in mixed motivation cases. It held that the General Counsel has the initial burden of showing that protected conduct was "a motivating factor" in the decision to discharge an employee. The burden then shifts to the employer to show that it would have discharged the employee absent participation in protected activity. Wright Line, 105 LRRM at 1175.
 
 
 26
 The Board is not disqualified from altering its rules. When it does so, we must still review its decision for rationality and consistency with the Act, and not construe the statute de novo. NLRB v. Local 103, International Association of Iron Workers, 434 U.S. 335, 350-51, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978). See also Ford Motor Co., 441 U.S. at 497, 99 S.Ct. at 1849. The rule articulated by the Board in Wright Line is a reasonably defensible interpretation of the Act, and is entitled to acceptance by this court. Ford Motor Co., supra.
 
 
 27
 The Wright Line rule is consistent with the legislative history of the Act, which reveals an intent to require the employer to show that an employee was discharged for cause. 93 Cong.Rec. 6678 (1947) (remarks of Sen. Taft), reprinted in 2 Legislative History of the Labor Management Relations Act, 1947, at 1595 (1947). See also NLRB v. Great Dane Trailers, Inc., 388 U.S. 26, 34, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027 (1967). It is also consistent with the reality that the employer has the best access to proof of motivation. Great Dane Trailers, Inc., supra. The new rule strikes an acceptable balance between protection of employees' rights and preservation of employers' rights to discharge employees for valid business reasons. See NLRB v. Erie Resistor Corp., 373 U.S. 221, 229, 83 S.Ct. 1139, 1145, 10 L.Ed.2d 308 (1963).
 
 B. The Finding of Unlawful Motivation
 
 28
 The Board found that the General Counsel carried its burden of showing that anti-union animus was a motivating factor in the decision not to retain the engineers. The Board found that Nevis failed to show that it would have acted as it did absent the protected conduct. Nevis contends that these findings are not supported by substantial evidence on the record viewed as a whole. We disagree.
 
 
 29
 There was credible testimony that Snider intended to fire enough employees to avoid incurring a duty to bargain. He discussed firing particular strong union members. Some of those individuals were not reemployed. At one meeting Snider stated that the hotel was to be non-union and that he was letting the entire engineering crew go.
 
 
 30
 Shortly after midnight on April 11, 1977, Snider abruptly told the engineers that they would not be allowed to work and that he was going to run a non-union operation. Snider claimed that he had a crew standing by to assume the engineers' duties. In fact, he had hired only one person, who was completely unfamiliar with the hotel's heating and air conditioning system. At the time of the dismissals, the air conditioning was malfunctioning, and the outside temperature was becoming quite hot. There was a great need for at least one experienced engineer to correct the malfunction in the air conditioning system. Snider did not discuss employment with any of the engineers.
 
 
 31
 Snider testified that he based his decision not to employ the engineers primarily on their poor work attitude. He had obtained unfavorable reports on two of them from the leasing agent and other unnamed persons, none of whom testified. Snider also testified that he had received good reports regarding the work of two of the engineers. Snider later added that watch engineers were unnecessary and were overpaid, but that he did not base his decision on those factors. He did not discuss wages with any of the engineers. He told one of them that he could not hire him because of "technicalities," which he was not at liberty to reveal.
 
 
 32
 The Board was justified in concluding that the justifications asserted by Snider were pretextual. Where the employer's asserted justification is shifting and unreliable, its case is weakened, and the conclusion that the true reason was for union activity is correspondingly strengthened. NLRB v. Superior Sales, Inc., 366 F.2d 229, 235 (8th Cir. 1966); NLRB v. Georgia Rug Mill, 308 F.2d 89, 91 (5th Cir. 1962).
 
 
 33
 IV. The Refusal to Retain Chief Engineer Brewer.
 
 
 34
 The Board held that Nevis violated section 8(a)(1) by refusing to retain Chief Engineer Brewer. Nevis contends that the Board applied an incorrect legal standard in reaching its conclusion.
 
 
 35
 The Act excludes supervisors from the definition of "employee." 29 U.S.C. § 152(3). The Act does not protect supervisors who engage in activity which, if engaged in by a non-supervisory employee, would be protected. Florida Power & Light Co. v. IBEW, Local 641, 417 U.S. 790, 806-08, 94 S.Ct. 2737, 2745-46, 41 L.Ed.2d 477 (1974). An employer has the right to insist on the loyalty of its supervisors. Id.
 
 
 36
 There are limited exceptions to the rule that employer conduct towards supervisors does not violate the Act. These exceptions protect employees' right "to have the privileges secured by the Act vindicated through the administrative procedures of the Board." NLRB v. Southland Paint Co., 394 F.2d 717, 721 (5th Cir. 1968). The exceptions have been construed narrowly. NLRB v. Southern Plasma Corp., 626 F.2d 1287, 1294 (5th Cir. 1980).
 
 
 37
 Courts have found a violation of section 8(a)(1) and ordered reinstatement of supervisors in three basic situations. Southern Plasma Corp., supra at 1294-95. The first is where a supervisor is disciplined for refusing to commit an unfair labor practice. Belcher Towing Co. v. NLRB, 614 F.2d 88, 91-92 (5th Cir. 1980); Gerry's Cash Markets, Inc. v. NLRB, 602 F.2d 1021, 1022-23 (1st Cir. 1979); Russell Stover Candies, Inc. v. NLRB, 551 F.2d 204, 206-08 (8th Cir. 1977). The second is where a supervisor is disciplined for testifying before the Board. King Radio Corp. v. NLRB, 398 F.2d 14, 21-22 (10th Cir. 1968); Southland Paint Co., 394 F.2d at 721; Oil City Brass Works v. NLRB, 357 F.2d 466, 470-71 (5th Cir. 1966). The third is where a supervisor who hired his own crew was discharged as a pretext for terminating his pro-union crew. Pioneer Drilling Co. v. NLRB, 391 F.2d 961, 963 (10th Cir. 1968).
 
 
 38
 In these cases reinstatement was ordered only to remedy harm done to rank and file employees. Berry Schools v. NLRB, 627 F.2d 692, 698-99 (5th Cir. 1980). See also NLRB v. Local 962, Pulp & Paper Workers, 498 F.2d 26, 28-29 (9th Cir. 1974), enforced on petition after remand, 510 F.2d 1364 (9th Cir. 1975). Reinstatement is not warranted merely because employees are put in fear of losing their jobs and thereby restrained from exercising their section 7 rights. Berry Schools, supra. But see King Radio Corp., 398 F.2d at 22 (dicta). No court has held that a series of terminations of both supervisors and employees, without more, justifies reinstatement of the supervisors.
 
 
 39
 In the instant case the Board ordered Nevis to reinstate Brewer because his discharge was motivated by a desire to stifle employees' exercise of section 7 rights and was part of an overall scheme to achieve that result. DRW Corp., 248 NLRB No. 95, 103 LRRM 1506, 1509 (1980); Production Stamping, Inc., 239 NLRB No. 176, 100 LRRM 1141 (1979). The Board claims that in such cases "employees cannot be expected to perceive the distinction between the employer's right to prohibit union activity among supervisors and their right to engage freely in such activity themselves." DRW Corp., 103 LRRM at 1508. Reinstatement of Brewer was required "to fully dissipate this coercive effect." Id.
 
 
 40
 Congress has expressly chosen not to protect pro-union activities of supervisors. Reinstating a supervisor whenever discipline might have a coercive effect on employees would tend to override the express will of Congress. E. g., Southern Plasma Corp., 626 F.2d at 1295 & n.8.
 
 
 41
 Reinstatement may be necessary where there is no other way to dissipate the coercive effect of an employer's actions. Discipline of a supervisor used as a conduit for disciplining employees might be such a case. See Pioneer Drilling Co., 391 F.2d at 963. In this case the coercive effect on employees can be eliminated by ordering reinstatement of the employees themselves.
 
 
 42
 Even granting considerable deference to the Board's interpretation of the Act, its order to reinstate Brewer is inconsistent with the statute.
 
 
 43
 V. The Requirement that Nevis Bargain with Local 39.
 
 
 44
 The Board presumed that Local 39 would have represented a majority of the engineers but for Nevis' unlawful refusal to retain them. See Kallman v. NLRB, 640 F.2d 1094 (9th Cir. 1981); K. B. & J. Young's Supermarkets, Inc. v. NLRB, 377 F.2d 463, 465 (9th Cir.), cert. denied, 389 U.S. 841, 88 S.Ct. 71, 19 L.Ed.2d 105 (1967); NLRB v. Houston Distribution Services, Inc., 573 F.2d 260, 267 (5th Cir.), cert. denied, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 705 (1978). Nevis claims that the presumption was rebutted by evidence that the engineers would not have accepted jobs for the wages Nevis offered.
 
 
 45
 Had Nevis not unlawfully refused to retain the engineers, they would have comprised a majority of the bargaining unit. Nevis would have been required to bargain with their representative, Local 39. NLRB v. Burns International Security Service, 406 U.S. 272, 281, 92 S.Ct. 1571, 1579, 32 L.Ed.2d 61 (1972). See also Kallman, supra. Nevis would not have been bound to the terms of the prior collective bargaining agreement. It could negotiate for lower wages. Id. at 287-88, 92 S.Ct. at 1582. It could not unilaterally set lower wages. NLRB v. Edjo, Inc., 631 F.2d 604, 606-08 (9th Cir. 1980). The Board's order directs Nevis to bargain with Local 39 as Nevis would have been required, absent its unlawful refusal to retain the engineers.
 
 CONCLUSION
 
 46
 Nevis does not contest that it committed unfair practices by interfering with the service employees it retained. There is substantial evidence on the record viewed as a whole supporting the Board's findings that Nevis conditioned Alford's retention on resignation from Local 39 and refused to retain the four engineers because of anti-union animus. The Board applied the wrong legal standard in holding that Nevis violated section 8(a)(1) by refusing to retain Supervisor Brewer. The Board did not err in ordering Nevis to bargain with Local 39.
 
 
 47
 The Board's order is ENFORCED except as to the refusal to retain Brewer. The petition for review is DENIED except as to Brewer.
 
 
 
 *
 The Honorable Robert C. Belloni, United States District Judge for the District of Oregon, sitting by designation